KANSAS PACIFIC RLY. CO. V. JOSEPH MONTELLE.

EVIDENCE; *Competency.* Proof that a passenger riding on a through ticket from New York city to Junction City by way of the Hannibal & St. Joseph railroad and the Kansas Pacific railway, delivered at Kansas City to the baggage master of the Kansas Pacific railway company, who was agent for both railroad companies, certain checks of the Hannibal & St. Joseph railroad company for baggage belonging to said passenger, with the understanding and agreement that the Kansas Pacific railway company should forward said baggage from Kansas City to Junction City, is some evidence tending to show that the said Kansas Pacific railway company received said baggage, and is therefore competent evidence to go to the jury for that purpose, along with the other evidence in the case tending to prove the same thing.

*Error from Davis District Court.*

MONTELLE bought through tickets for himself and family from New York city to Junction City, Kas. He was an immigrant from England, and his luggage consisted of thirteen boxes, trunks and packs, which were weighed, marked, and checked at New York by the baggage-master. The boxes were numbered from 1 to 13, and marked, "Paid through to Junction City, Kas." *Montelle* paid $120 extra for said baggage or luggage, and each of the thirteen articles so marked was checked, *Montelle* receiving thirteen regular baggage-checks therefor. The checks were changed at Toledo, and again at Quincy, *Montelle* receiving thirteen checks at each change. He delivered to the baggage-master of the *K. P. Rly. Co.* at Kansas City the thirteen checks last received. Said baggage-master, making no complaint that any of the articles were missing, weighed the articles, and demanded $15 extra on account of extra weight, and refused to deliver the checks for Junction City, as *Montelle* refused to pay the extra charges demanded, but said he would send articles and checks through to the agent at Junction City to whom *Montelle* could pay the $15. Two of the thirteen articles never reached Junction City — a large box and a tool chest. The action below was brought to recover $700, the alleged value of the contents of the missing box and chest. The petition did not aver that

the lost property was baggage, and the list of it set forth in the petition contains such articles as a mahogany desk, rosewood chairs, glass dishes, and thirty parcels of seeds. The answer was a general denial. The case was tried at the May Term 1871. Among other points the defendants contended that they had not received the box and chest at Kansas City from the connecting line, and were not liable. Verdict and judgment for plaintiff for $665. New trial refused, and the *Railway Co.* bring the case here.

*J. P. Usher, E. W. Dennis,* and *John M. McDonald,* for plaintiff in error:

1. Granting that the defendant was a common carrier, and that if the boxes were delivered it was bound to safely carry the same to Junction City, the question is, was there *any* proof of such delivery? Montelle sought to establish it by proof of the delivery of certain checks, which he had obtained from a railroad company at Quincy. Those boxes are not proved to have been seen at any other place than Castle Garden, New York; but because the plaintiff paid $120 in New York for the transportation of these and other goods to Junction City, to some person acting as an agent for a railroad company (without stating what company,) and from whom he took no contract, bill of lading, or other evidence that the goods were to be transported, but did take checks corresponding in number to the parcels which he had so paid for transporting, which checks were changed at intervals along the road, and finally delivered into the possession of the joint agent of this road and the H. & St. Jo. road, at Kansas City, he seeks to recover, and offers such delivery of checks as proof of delivery of the boxes and as ground for recovery, (for he cannot recover of the defendant for that which the defendant never received.) These checks it appears were only for the line of road for which that New York agent acted. At Quincy the checks were changed, but the boxes alleged to be lost were not seen or proved to have arrived at Quincy. At Kansas City the checks were handed to the joint agent of the

H. & St. Jo. and defendant's road for the purpose of re-check-
ing.    This was all that was shown in the way of a delivery
to this defendant.    If the H. & St. Jo. Co. had received the
packages for which this suit was brought, it could not make
the defendant below liable for the loss of the same, unless
they had been actually delivered to it or its agents.    Now
the liability of a common carrier begins when the goods or
merchandise is delivered to it or its agents for shipment and
not before.    Pierce Am. Rly. Law, 425; 2 Redfield on Rlys., 45.
The plaintiff's case is based upon an allegation "that the
defendant was a common carrier."    He does not pretend that
this package or box was received by the defendant as a part
of his baggage as a passenger, but directly to the contrary.
The fact that he was a passenger has nothing to do with it,
so far as he states his case.    He well knew that he could not
claim and maintain that the package was of such character as
would entitle him to recover for it as baggage, and hence he
put his case upon entirely different ground.    He alleges "that
the compensation for carriage was to be a reasonable reward,"
and not based at all on the fact that he or his family were
passengers.    Therefore, when we consider that he had no
contract in writing; that there was no bill of lading taken
in New York; that there was no company there authorized to
contract for the defendant, it was impossible for the plaintiff
to recover, unless he had proved by competent evidence that
the parcels for which the suit was brought were in fact *deliv-
ered to defendant;* and on this point we assert there was not
a particle of proof.    No checks of this company were issued.
The proof is clear and conclusive that all the packages which
the defendant received were delivered at Junction City.    The
case is one of absolute, total failure of proof, and not one
where the evidence is in conflict or where there is *some*
evidence to support the case, but there is in fact none.

In this connection the attention of the court is called to
error of the district court in refusing to instruct the jury to
find for the defendant.    The delivery of checks of the H. &
St. Jo. road to the joint transfer-agent of that road and the

9—10 KAS.

defendant was held by the court to be sufficient to go to the jury for them to decide whether or not that was a delivery of the boxes sued for. The delivery of the checks could not be called a constructive delivery of the boxes or baggage under any rule of law concerning constructive delivery.

2. But even if it be assumed that the articles sued for were delivered, and the plaintiff below paid extra for the transportation of this as baggage from Kansas City to Junction City, on account of excess in weight, (which was refunded,) the company did not thereby agree to carry articles other than legitimate baggage. 38 Ill., 219. The question whether this or that thing is baggage, (there being no controversy about the facts concerning the passenger's calling or destination, etc.,) must be a question of law. This proposition, in abstract, neither the plaintiff nor the court below was, perhaps, inclined to deny, against authorities so respectable as those we cite, wherein courts assumed to say what was baggage: Angell on Carriers, § 115; 44 N. H., 325; 5 Cush., 69; 10 Cush., 506; 6 Ind., 242. But the plaintiff, defendant in error, may seek to avoid this by insisting that if a railway company receives this or that and checks it *as* baggage, the carrier is bound for loss of contents, whatever they are.

3. The variance between the pleadings and proofs should have been fatal to the plaintiff below. A party cannot be permitted to sue for loss of freight and recover on testimony concerning what he has treated as baggage. It was in fact a failure of proof. Code, § 135.

*Gillpatrick & Gilbert*, for defendant in error:

1. The plaintiff in error contends 'that there is a fatal variance between the petition and the proof. This position was not taken at the trial, and we think cannot be maintained now; that in fact, the point is *not* now open as an original proposition. But if the court think otherwise, the objection is easily answered. The petition alleged that the defendant company were common carriers, and that, as such, they received the goods to be carried for hire. Whether to be

carried as freight or as baggage, they were to be carried for hire, since the money paid for the transportation of a passenger includes the carriage of baggage; and it is necessary only to show that service was undertaken for hire, without setting out the particular nature of the reward, or the manner or connection in which it was received. But the plaintiff procured tickets at New York city for the passage of himself and party thence to Junction City. He had more baggage than the rules allowed him to carry as baggage. He therefore contracted there for the carriage of the excess to Junction City for the sum of $120. The plaintiff in error was a common carrier, who undertook to perform its portion of the undertaking which the common carrier who issued the tickets had made, receiving its proportion of the reward and compensation for carrying the passengers of the party, and such goods as they had no right to carry without. Is there any room for cavil whether this is a binding contract? And if they undertake to carry the goods upon the train which carries the passenger, is it any the less a carrying for hire? And is it a question of any moment whether the hire is included in the fare, or whether it is a further sum paid for the service stipulated? But plaintiff in error contends that "by receiving extra pay, they did not agree to carry articles other than legitimate baggage." Upon what grounds can this separation be supported? There was no question raised by the parties as to the contents of the parcels of baggage; nor their character; nor that defendant in error was notified what they must or must not be. The contractor weighed them, and thereupon demanded $120 for carrying them, which was paid. The state of the transaction carries with it the proof of the undertaking. And it was wholly immaterial whether there was any anterior contract or not between the party who issued the tickets and the plaintiff in error. The tickets imply such a contract. They undertake virtually that the passengers shall be transported over the road of plaintiff in error. If there was any anterior contract, well. If there was none, and if the first party made that contract with the

passenger, without authority from plaintiff in error, still such act and contract have been ratified, as the company admit that it was their custom to accept coupons (tickets) for the fare of passengers when issued by a responsible company. The contract being thus ratified was just as binding as if it had been previously authorized.

Counsel for the railroad company are in error when they say that Montelle relies solely upon proof of delivery of the checks to establish the fact of a delivery of the goods. We rely upon all the transactions, from the original weighing, marking and checking, in New York, re-checking *en route*, and delivery of the whole thirteen checks to the company's agent, who held them without complaint that any parcel was missing, although he weighed the parcels and demanded extra pay for alleged *overweight*—a fact which could not exist if only 11 of the 13 packages, (and one of those the heaviest of them all,) had not been received.

2. Again, there was no error in the instructions. The district court held that the testimony was sufficient to go to the jury inasmuch as it *tended* to show that the defendant had received the alleged lost baggage; and the decision and ruling were correct.

3. The motion for a new trial was properly refused. If the jury believed the testimony of plaintiff below and his witnesses, a verdict in his favor was inevitable. They did believe, and they were the sole judges of the credibility of the witnesses, and of the facts proven. And this court will not reverse the judgment upon conflicting testimony.

The opinion of the court was delivered by

VALENTINE, J.: The plaintiff in error (defendant below) claim that there are three questions for us to decide in this case. These questions are as follows: *First*, Whether proof of delivery by the plaintiff to the joint agent of the defendant and the Hannibal & St. Joseph Railroad Company of checks of the last-named company, calling for the transportation of baggage from Quincy to Kansas City, was suffi-

cient evidence to go to the jury to show *prima facie* that the defendant received the goods, etc., which the plaintiff alleged he delivered to the defendant to be transported to Junction City. *Second*, Whether certain specific enumerated and described articles of personal property are passengers' baggage, (all the facts and circumstances as to the business of the passenger, and the nature of the articles being undisputed,) is a question of law for the court, and not a question of fact for the jury. *Third*, Whether the plaintiff, under an allegation that he delivered goods to be carried for a reasonable reward, and issue thereon, can change his ground upon the trial and maintain his case by proof that he was a passenger, and that the goods were his baggage to be carried as such passenger.

I. We do not think it is necessary to decide this question. It is not in fact in the case. The court below did not anywhere rule that the delivery of said checks was "sufficient evidence to go to the jury to show *prima facie* that the defendant received the goods." Nor did the court even rule that all the evidence upon that subject, taken together, was sufficient evidence to show *prima facie* that the defendant received said goods. The most that can be claimed is, that the court ruled that the delivery of said checks to the baggage-master of the Kansas Pacific Railway Company, at Kansas City, with the understanding and agreement that said railway company should forward the goods represented by said checks from Kansas City to Junction City, was some evidence that tended to prove that the railway company received the goods, and therefore the court ruled that the said evidence was competent to go to the jury for that purpose along with the other evidence in the case tending to prove the same thing. In this we think the court was correct. It is not necessary that evidence shall prove a thing *prima facie* in order that it may be admitted. If it tends to prove the thing, or if it is a link in the chain of evidence that tends to prove a thing, it may be admitted. The motion of the defendants, made before the evidence was concluded, asking

the court to instruct the jury to find for the defendants on the ground that there was no evidence tending to show that the defendants ever received said goods, was rightfully overruled. The motion was made too soon. This case was tried May 25, 1871, at which time § 275 of the code (Gen. Stat., 681, since amended,) was in force. Again, there was evidence tending to prove that the defendants received said goods. Taking the whole of the evidence for the plaintiff together we think there was sufficient to prove *prima facie* that the railway company received said goods. According to the testimony of plaintiff's witness the railway company received thirteen checks for thirteen pieces or packages of goods; the company weighed them, agreed to forward them to Junction City, charged $15 extra for transporting them from Kansas City to Junction City, and not a word was said about any missing goods. There was strong evidence however on the part of the railway company tending to show that the railway company never did receive said goods. Probably the preponderance of the evidence was that way; and it is also probable that in fact the railway company never did receive said goods; but the fault was on the part of the jury in finding as it did, and not on the part of the court for permitting the said evidence to be received by the jury. The case was fairly submitted to the jury by the court. The charge of the court to the jury upon the subject was correct. The court charged "that unless the jury are well satisfied from the evidence that the property came into the actual possession of the defendant at Kansas City the plaintiff cannot recover." Upon the evidence in the case, and this instruction, together with other appropriate instructions, the jury found for the plaintiff. The court then, upon a motion for a new trial upon the ground (among other grounds) "that the verdict was not sustained by sufficient evidence," refused to grant a new trial. The defendant is now without a remedy. We think it has been well settled in this court that where a jury has heard all the evidence in a case, and rendered their verdict thereon, and the court below has refused to set aside the verdict we cannot

retry the case and render a different verdict, nor even set aside the verdict and grant a new trial provided there is sufficient evidence if uncontradicted to uphold the verdict although the weight or preponderance of the evidence may seem to be against the verdict. *Blair v. Fields,* 5 Kas., 58; *U. P. Rly. Co. v. Coldwell,* 5 Kas., 82, 84, and cases there cited; *Pacific Rld. Co. v. Nash,* 7 Kas., 280; *Kansas Ins. Co. v. Berry,* 8 Kas., 159; *Abeles v. Cohen,* 8 Kas., 180; *School District v. Griner,* 8 Kas., 224; *K. P. Rly. Co. v. McCoy,* 8 Kas., 538.

II. The question whether certain articles of personal property are "passengers' baggage," we forbear to discuss or to decide, as the question is not in the case.

III. Without analyzing either the petition or the evidence, and without critically and in detail comparing their separate parts with each other, we would say there was no such variance between the pleadings and the proof as would defeat the plaintiff's action. (*Mo. Valley Rld. Co. v. Caldwell,* 8 Kas., 244.) The plaintiff not only paid for transporting his goods by purchasing passenger tickets, but he also paid extra charges for their transportation. At New York City he paid $120 extra charges for transporting the goods to Junction City, and at Junction City he paid $15 extra charges. The $15 however was afterward returned to him. The evidence does not show that it was understood by the parties that the goods were to be personal baggage only, or that they were to be transported merely as personal baggage. The evidence would tend to show otherwise. It can scarcely be supposed that the agents of the railway company could be mistaken with regard to the character of the tool chest. Those extra charges were probably required as much because the goods were not merely personal baggage as because they were over the ordinary weight carried as personal baggage. The judgment of the court below must be affirmed.

All the Justices concurring.